Good morning, your honors. And to you, Justice O'Connor, my name is Jim O'Brien and I'm here on behalf of Elkhorn. But before I spend a little time in argument, I wish to welcome Justice O'Connor on behalf of the people of the state of Montana and the state bar. And your penchant for fly fishing is well known. I am a fly fisherman myself. I commend you to the Blue Ribbon Stream near Missoula, known as Rock Creek. And I couldn't help but notice also that Justice Scalia is nearby and you might be able to renew your acquaintance with him. With that in mind, we believe that there are three principal issues that we think is under consideration for this court. That is whether or not the record search was adequate and reasonable under the FOIA Act and that it was clearly erroneous in the lower court's decision. Whether or not there should be some limited discovery to be ordered by the lower court, which is outlined in page 19 of my opening brief. And then regardless of those two issues, and separately, is whether or not attorney's fees are present under the FOIA Act given the new complication of the catalyst theory. And we have noted in the record the wild lands analysis and we think that applies here. As this court is aware, the standard of review is Lyon Raisin Incorporated. I think there's no dispute over that. That would require an adequate factual basis in the lower court's memorandum, which I believe is lacking in this case. And that also the court would then do, this court would then do a de novo review. And we maintain there is no adequate factual basis because the court below simply made conclusions. It certainly noted that it was a detailed explanation, but it didn't explain the facts upon which it was making the decision. We think that the multiple declarations by DeVock really actually underline that there wasn't a factual basis. In particular, DeVock in her first affidavit or her first declaration claims that the methods included searching of all papers and electronic files. And then the subsequent, the two subsequent declarations demonstrate that that was simply not true. The first one demonstrated that actual files were located, actual additional paper files were located and actual additional electronic files. In fact, DeVock- That's really not unusual in a FOIA case, though, as a counsel, to have one search and then there's a second search that turns up additional documents and then somebody remembers some files somewhere else. I think that might be an appropriate observation. But prior to even this, there were three searches beforehand. And we do note that apparently the agency didn't take that very seriously simply because the court knows from the record that there was a pro se filing. It was removed a month later to the federal district court. And then two weeks after that was the first time documents were produced. So no documents were produced at the administrative level of any significance. So we also note- But how would make a principal distinction on what's a normal search that simply yields different results and then a continuing search because there is a duty to supplement and one that is unreasonable under- And it involves two agency decisions, one with the State Department and the other one with the CIA. The CIA's disclosures in that lower court Truitt opinion were reasonable. They advised the court that all repositories had been searched and that there really wasn't a FOIA claim against the CIA. Unlike the CIA, the State Department and the Truitt court in that case even said you don't have to establish bad faith. You just merely need to show there was some mistake. The State Department sort of played a little bit of a game, wasn't particularly clear about what documents were searched or were not searched. So we think that the court's reliance on the Truitt opinion is a good- That's a good case, but that it just didn't apply that case to the Instant case. With respect to these, what we have, I believe, Your Honor, is a sort of leakage of documents over time. We have one set of documents being revealed following removal to federal court. Then we have another one just the day prior to the due date on the Vaughn Index. We have a Hensley document. Then following the counteraffidavit of Elkhorn, we have subsequent disclosures, including, gee whiz, I gave our employees, I'm supervising here, I gave employees very clear instructions, but they didn't understand what instructions to follow. I gave them clear instructions to produce all records, and they produced only official agency records. Well, we need the court. Elkhorn proposes to this court that there has to be a very clear line here that the emphasis is on disclosure, not on withholding. And if employees, if the government is allowed or the agency is allowed to come in and say, gee whiz, the people I was supervising didn't listen to me or misunderstood or didn't talk to me, all we're going to do is encourage additional litigation. Mr. O'Brien, the government makes some procedural objections that you or your side did not file motions for discovery and attorney's fees as required under the rules. What do you say about that? We requested that out of the district court, and we briefed that for the district court. I don't know what additional things need to be done besides bringing that to the court's attention, whether it's in a formal written motion or whether it's brought to the court's attention in oral argument. So you would refer us to the record in the district court? Yes. And one of the things that I was under was the lower court wants me to discuss exactly what documents are there. Of course, we've never seen the files, so I'm not fully capable of articulating what documents were there. But I was able to point out to the lower court that while this was an ongoing process from 2001 through 2006, the first document that was disposed was a 2003 document. And I pointed that out to the court. I don't know what other documents might precede 2003, but it is unlikely. But you don't want to tell us anything about the failure to file a motion for discovery or for attorney's fees? No. Well, those are two issues. Two separate issues. Yes. I brought the argument on the need for some additional discovery to the lower court, whether it was in the formal view of written motions. But you just raised that in oral argument, didn't you? Yes. I mean, I've read the record. But unless I'm mistaken, you didn't file a Rule 56-F request, did you? I did not file a Rule 56-F. Isn't that fatal to your claim? I don't believe so. Why not? Because I think we can raise it in oral argument. That's our position. And your case? Pardon? And your best case on that? Well, I don't have one available now. But it would be that the court has the option. Once we bring it to the attention of the court, it is our view that that is sufficient. It can be done by oral motion. I am concerned, though, that you are supposed to, under the rules, file motions for discovery or for attorney's fees. And if we don't find them, you want us to search the record and just consider an oral request as sufficient? Well, in addressing the issue on attorney's fees, I don't think Rule 54 should be read in a vacuum. We have Rule 56-D. And one of the problems here is with the court's memorandum. And the court's memorandum below simply says there's no further evidentiary hearing to be had. It ruled on, if you will, it ruled on my motion for additional action, including and because there was no evidentiary hearing, what we have is, no, the court below did not apply the catalyst theory. So there was no fact or no finding from which I could make a motion for attorney's fees. It simply ruled that the BLM has responded. There's no further evidentiary hearing. So I could not, there was no issue finding fact or conclusion of law from which I could say I'm entitled to attorney's fees or my client's entitled to attorney's fees to make the motion to trigger the 14 days. Let me ask one more question. I gather you contend that the BLM still hasn't produced all the documents. Is that right? As far as we know, they haven't. We haven't had an affirmative representation that all repositories have been searched, and we haven't had an affirmative representation that all documents between 2001 and 2003 have been identified. Want to save some time for rebuttal? Yes. Thank you, Your Honor. May it please the Court, I'm Victoria Francis, and I'm counsel for the United States in this proceeding. One of the fundamental bases of our democracy is the right of citizens to obtain records. But by the same token, the courts have recognized that this does place a burden on the agencies. That doesn't mean the agencies don't have to meet that burden, but there is a recognition that when the agencies are keeping records, they're not thinking, oh, there might be a FOIA request. We have land management agencies with lots of different people with their own little e-mail systems. They're keeping informal files. They have the formal file with final documents. So the agency's obligation, and it's clear under the law, is to make a reasonably calculated search to uncover all relevant documents. The courts to review that using a standard of reasonableness, and I think in part in recognition of the complexities of this. And the issue is not just whether there might exist some other document, because that isn't the standard, the fact that some other documents might exist. The standard is whether the search itself was reasonably calculated to uncover the documents. But on the facts of this case, there appears to have been a file that was discovered somewhat belatedly. Why was that particular file not uncovered earlier? Your Honor, the file that was discovered belatedly was in February 14th of 2008, and the employee had had an informal file in his office. William Hensley, when he came to his attention, he took it to the FOIA coordinator, as he should, and disclosed those documents. But he had it in his own possession, like in his own file cabinet? It was in the office. It was somewhere in the office. The office meaning his particular office where he closes the door, and the office meaning where 500 people are? What do you mean by the office? I believe it was in, some people keep very neat desks, and other people, some attorneys as well, keep piles of files. And in the midst of everyday business, he found just a regular file. It had a lot of duplicates of what already had been produced. It had a few items that hadn't been. The obligation there is to go produce it. And that was produced, and we don't want to chill that. I mean, I guess, I think it shows good faith. I mean, should it have been better? But the test isn't just good faith. I think the test is adequacy of the search. Yeah, it is adequacy of the search. But the mere fact, and as this Court fairly recently found in the Lahr case, the mere fact that there might be other documents that are discussed and referenced in what you produced, or that people find additional files and make subsequent disclosures, doesn't mean that the search was inadequate, and it doesn't mean it's in bad faith. And this Court, and Lahr, and Miller, referencing Miller, kind of citing to those issues. And if we look at what really was happening here, is some confusion in this FOIA request and in the clarification. And I would like to correct one thing. The suit in the State District Court on the FOIA matter, because this plaintiff filed in State Court on the FOIA issue, didn't occur until March of 2007. That was after the initial disclosure. Right, the disclosures were made over a period of two years plus. Well, some of the disclosures seem to be occasioned by the filing of court action, which should not be necessary. Well, what we have is initial disclosure in January, and then she files an administrative review, the plaintiff. And in the course of that administrative review, the FOIA officer, there was an acting FOIA officer signing the January, understands that there's been some misunderstanding. They do some additional search, and they also re-look at some of their exemptions that they had claimed. So they disclosed some of the things that had previously withheld. And then she files suit in State Court, but the administrative review is still ongoing. And then in November, they didn't find new files. That disclosure is based on the fact that they had Washington, D.C., FOIA counsel looking at it, and after further discussion of the breadth of some of the exemptions, decided, no, we were going too far initially, disclosed some additional documents. And then in February, we have Mr. Hensley, who found this dummy file, informal working file in his office, and we came forth. The other two documents are not really like newfound disclosures, and part of it is based on the understanding of this FOIA. And there is, the courts have recognized, sort of a mutual obligation of the parties to communicate. And I can't help in looking at this file that if this plaintiff had picked up the phone and said, you know what I mean by such and such, I'm not seeing that, why isn't that in there? And someone would have said, oh, when your FOIA request said to the present, we understood that to be September, what they did in the request. So the fact that we write letters in October, and we didn't recopy them to you isn't necessarily bad faith, but a misunderstanding. And the fact that some of those letters in October were sent to you in the regular course of business, we didn't think we had to resend them to you as part of a FOIA request. In a sense, this is a two-way street. And I feel like if the parties, if this plaintiff had called and said, this is what I understand, it became sort of this, kind of this little game. Well, I wouldn't go that far. I mean, it did terminate all the benefits, so it wasn't exactly a happy relationship. Well, there was ongoing litigation. And, you know, there was. I don't think we're going to hold that she had an affirmative duty to call you. No, she doesn't have an affirmative duty. But it would help. And by the same token, when it appears that the agency is misunderstanding what you're asking for, the other source of misunderstanding is they're stating that the search shouldn't take more than two hours in the clarification letter in October. If it is more than 100 pages in two hours, you're not understanding what I'm asking for. Well, which, what does that mean exactly? Is there any obligation under FOIA to maintain, for the agency to maintain its records in such a form that a reasonable search will turn them up? The reason I ask this is, it would trouble me if an agency can maintain its documents in such a disorganized mess that even an assiduous search will turn up only half of them. That that turns out to be a defense. Basically, we're so sloppy we can't find them. No. I don't think that FOIA has that obligation, Your Honor. There is a records detention act. So, we're so sloppy we can't find them is a good defense when, in fact, your search doesn't turn up very many of them? That is not what I'm arguing, Your Honor. What I'm arguing is you go search. And, again, we're looking through e-mail files of hundreds of e-mails of employees, and especially land management agencies. They always have lots of cooks in their kitchen. Employees are ticking down. The fact that you may have missed an e-mail doesn't mean, or that a couple of employees may have thought, oh, that was in the original file. That must have gone. And that's what's going on here. We have a branch office searching. We have the state office searching. We have someone checking the national database. And we have people checking card files, their e-mail files. And once you get three lawyers working on a case, everybody's got sort of their little working hand scratching things. And there is a requirement to keep a formal file with the final decisions. That is part of the records retention act. And in this case, we had two interior board of contract appeals cases that predated all of this. She said she didn't want anything that was in those files. So, again, the agency's thinking she doesn't want stuff she already has. May I ask you another question, please? Do you think the district court's decision to review withheld documents in camera was an error? No, Your Honor. I think that is totally up to the district court to end the discussion. Why not? There's no requirement there? The district court does not have to look in camera unless the affidavits are so conclusory that they could not apply the exemptions. In this case, the district court didn't determine the affidavits to be defective. At the very outset, Judge Haddon at the scheduling conference said, I want your affidavits, your declarations, and all the documents to review in camera at the same time. Do any of the precedents of this very circuit addressing that issue give you any concern about your answer? If the district court had decided to order in camera after it looked at affidavits in the Vaughan Index and determined that to be defective, maybe there could be a negative implication. But in this case, where the district court doesn't have any of that before it, but just for its own reasons, desires to have everything produced at once, I don't think any negative implication should be taken from an in-camera review. Turning to the discovery issue, I'm a bit troubled by the district court's hearing. Mr. Bryant's quite correct that he did ask for discovery orally. He wanted to put on a witness to say, here are the documents we don't think have been produced. The district judge didn't allow that testimony. And I think probably because he wanted to conduct further proceedings. And then there was the order. So one can say, certainly, that a formal 56-F motion wasn't filed. But on the other hand, I think the issue was fairly presented to the district court. Don't you think? Actually, the precedent of this circuit is that a formal Rule 56-F motion is to be filed before the oral argument. So the parties can be prepared. And so the court can have an opportunity then to see what is the discovery they want to have and why do they want to have it without that. And in this case, they gave an opportunity, list what you think. We were trying to cooperate with this plaintiff to understand things. Just the troubling part of it is that it's not the ordinary case where there's absolutely no assertion. But Mr. O'Brien brings his client to the hearing and says, here's what I'd like to put on my client to tell you what we'd like to hear and we'd like to discover. I'm not going to understand why Judge Hatton might do that. But to segue from that to a total waiver may be a bit of a chomp. But any further questions from the panel? All right. Thank you. Thank you, Your Honors. I think that there were just a couple of points that I would like to respond to. One is, at the worst, this court can't imply anything into Judge Hatton's determination to demand an in-camera review. From our perspective, from Alcorn's perspective, the complaints set the parameters and those allegations were sufficient to cause Judge Hatton to say, I've got to look at these documents in camera. This history of what has gone on is the reason why I want to look at what's going on in these documents. So we take the position that there was a basis for the judge to say, I'm skeptical of what your records are. That's why I want an in-camera inspection. Secondly, Ms. Francis indicated that this is a two-way street. Again, I would refer this court to the Truitt opinion because it's really clear that the FOIA, it's been amended to make sure that there isn't code language such as narrative briefing or briefing paper, that these are reasonably clear instructions and requests. There isn't anything at any point at which she said, don't give me any of these documents pre-2003. That was one of the issues. And so we think that the burden was on the agency to produce these records. And then finally, we do request, even if the court is not persuaded or somehow that the issue of limited discovery was not sufficiently and formally applied for, that doesn't take away from this court, we are asking this court to review the actual factual basis, the clear error of law, and to review separately the issue of eligibility for attorney's fees under the second provision of FOIA. Thank you. I see my time is up. Thank you, Mr. O'Brien. Thank you. The case will be submitted for decision.
judges: O'connor, Thomas, Fletcher W.